Timothy Wayne MARION, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–81–00270–CR.

Court of Appeals of Texas,
El Paso.

Oct. 20, 1982.

Rehearing Denied Nov. 17, 1982.

Discretionary Review Refused
March 1, 1983.

**56**

Gary Norwood, Cotton, Bledsoe, Tighe & Dawson, P.C., Midland, for appellant.

Vern F. Martin, Dist. Atty., Steven W. Bruneman, Asst. Dist. Atty., Midland, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

OPINION

WARD, Justice.

This is an appeal from a conviction for burglary of a habitation. The court assessed punishment at sixteen years confinement. We affirm.

In Ground of Error No. One, Appellant contends that the court's charge to the jury failed to include an essential element of the offense as required by Penal Code Section 30.02(a)(1) and the indictment. The State's pleadings accused Appellant of entering a habitation without the owner's effective consent and with intent to commit theft. Upon the pleadings and the evidence, the court properly charged the jury on the law of parties. In paragraph five, following an abstract definition of party responsibility, the court applied the law to the facts. Initially the court simply tracked the language of the indictment and the statute, inserting the phrase:

> [T]he defendant, TIMOTHY WAYNE MARION, acting alone or together with Charles Brown and Kenneth Marion, or with either of them, as a party . . . .

The dual mental culpability requirement was clearly set out: 1) intentional or knowing entry and 2) intent to commit theft. The court concluded the paragraph with an alternative application alleging Charles Brown and Kenneth Marion as the primary actors and authorizing conviction of Appellant if the jury found beyond a reasonable doubt that he knew of their intent to enter the habitation and acted with intent to promote or assist the commission of the offense by them. The dual mental culpability requirement of Brown and Kenneth Marion was again set out specifically. In this variation, however, the only requirement of mental culpability on the part of Appellant was knowledge of their intent to enter the habitation and intent to assist the commission of "the offense" by them.

Appellant did not object to the charge. Consequently, appellate review is limited to questions of fundamental error. Appellant contends that the alternative application of the law to the facts presents fundamental error since it would permit his conviction as a party to the burglary without a finding that his intent or knowledge extended not only to entry but to theft. He argues that an essential element of the burglary offense was omitted, and he was convicted on a charge stating no more than criminal trespass. *Cumbie v. State*, 578 S.W.2d 732, 733–734 (Tex.Cr.App.1979).

In the recent opinion in *Doyle v. State,* 631 S.W.2d 732 (Tex.Cr.App.1982), the Court of Criminal Appeals reversed a conviction for unlawful possession of a firearm by a convicted felon. The charge failed to include any mens rea in either the abstract definition of the offense or in the application of the law to the facts. Definitions of "intentional" and "knowing" were included but without guidance as to their application to the determination of guilt. The State requested rehearing, urging that a reading of the charge as a whole, including the definitions of the two mental states, would disclose all of the requisite elements of the offense. On rehearing, the court stated that appellate recourse to the charge as a whole was appropriate to interpret or "flesh out" the application of the law to the facts. Such a method of review is not applicable when an entire element of the offense is omitted from the application paragraph. *Doyle,* at 738.

In the present case, the element of "intent to commit theft" was not entirely omitted from the application of the law to the facts. It was clearly presented in the first clause concerning Appellant's "acting alone or together with Charles Brown and Kenneth Marion." The second clause, describing Brown and Appellant's brother as the primary actors, refers to Appellant's *knowledge* of their intent to enter and his *intent* to promote or assist their commission of the offense. Appellant, of course, argues that this assessment of his mental state goes only to a party responsibility for entry and not theft. We disagree. The latter element is not omitted, but is ambiguously stated in the second half of the application paragraph. Consequently, it is appropriate to turn to the remainder of the charge to determine whether or not the jury's verdict was necessarily based upon findings as to each element required by the penal statute and the pleadings.

Unlike the charge in *Doyle,* this charge included the correct state of mental culpability in the abstract definition of the offense. Definitions of "intentional" and "knowing" were provided. The abstract explanation of party liability made it clear that the party's intent must be coextensive with that of the other parties or primary actors, in this case a dual mental element of intentional or knowing entry and intent to commit theft. Finally, it is appropriate to assess potential harm to the Appellant by the charge as delivered. Could this charge have permitted the jury to return a guilty verdict as to burglary without requiring them to pass on "intent to commit theft"? Here the jury was provided a lesser included offense of criminal trespass, distinguished from the greater charge primarily by the absence of any intent to steal. The inclusion of this contrasting offense and its lesser constituent elements is a further basis for our conclusion that the second half of the burglary application paragraph did require a finding as to all requisite elements of that greater offense. Any ambiguity in the phrasing of the requisite burglary mens rea would certainly have been made clear by comparison with the lesser included offense of criminal trespass. In the *Doyle* opinion, on rehearing, Judge Teague stated:

> Jurors should not be required and expected, and they are not required under our law, to put together pieces of what may appear to them to be a jigsaw puzzle to determine which elements must be proved in order to find that the defendant committed the offense which he was charged with committing.

*Doyle,* at 737. It is also not in the interest of justice to indulge the Appellant's application of a mental *jigsaw* to an otherwise whole and intelligible picture, converting it into a post-conviction legal puzzle. Our analysis is not a speculative exercise in how the jury probably assembled the pieces of this charge. The jury in this case, unencumbered by legal training, never perceived the ambiguity urged by Appellant, but assessed all of the requisite burglary elements as a matter of common sense application of the entire charge. In this charge, all requisite elements of the offense of burglary were addressed in the application of the law to the facts. Any ambiguity, to layman or lawyer, was adequately clarified by the charge as a whole. Ground of Error No. One is overruled.

■ In Ground of Error No. Two, Appellant challenges the "pretrial" ruling of the court that he was subjected to a legal citizen's arrest. Appellant refers to the court's findings of fact and conclusions of law concerning the arrest and voluntariness of the confession, dated January 26, 1981. In fact, those findings and conclusions are consolidated from both the pre-trial hearing and the trial itself. A pre-trial hearing was held on January 6, at which time Appellant only raised the voluntariness of his confession. No challenge was made to the propriety of his arrest. The court's findings as to the arrest were solely the result of evidence presented during trial. Ground of Error No. Two is overruled.

In Grounds of Error Nos. Three and Five, Appellant contends that his confession and the testimony concerning his arrest were inadmissible as fruits of an illegal arrest.

The evidence indicated that Bobby Harrison went to visit the complainant at his home at approximately 3:00 p.m., October 26, 1980. The home was situated in a rural agricultural area in Midland County. En route to the residence, he observed the complainant's vehicle parked at his father-in-law's house. Continuing on to the complainant's residence, he observed a black automobile parked in front of the house. A black male was behind the wheel. As Harrison approached, the black vehicle began to pull away. At the same time, a large black male exited the front door of the complainant's home carrying boxes. Upon seeing Harrison, he reentered. Harrison testified that he was familiar with the complainant's friends and that he had no black friends. Harrison did not recognize either individual or the black automobile. He pulled into the yard, and, as he did so, the large black male jumped over the back fence and entered the surrounding cotton field. Harrison drove around the side of the house, and a second thin, black male came over the fence from the complainant's back yard. He, too, ran into the cotton field. With his vehicle, Harrison attempted to herd the two back into the field, away from the road and the previously observed black vehicle. The first large black male managed to get back to the house, recrossing the fence. Harrison broke off pursuit long enough to summon help from neighbors. Harrison ultimately located the thin black male lying prone in the cotton field twenty to thirty minutes after the initial sighting. Neighbors apprehended the large black male in an adjacent field. The thin subject was identified as the Appellant. The complainant, Russell Brooks, testified that his home had been entered without his consent. A television set, a pistol, and a rifle were missing. Appellant was turned over to sheriff's deputies. After magistrate's warnings and additional *Miranda* warnings by the deputies, Appellant confessed. He also identified his brother, Kenneth, as the driver of the black automobile.

■ We find the citizen's arrest proper under Article 14.01(a) of the Code of Criminal Procedure. Harrison's direct observations of the black male emerging from the house with boxes, the departure of the black vehicle, and the flight of both black males into the adjacent cotton fields provided probable cause to believe that a felony offense of burglary was taking place. While he did not observe the Appellant inside the residence, it would not be reasonable to assume that one stranger was committing burglary while another stranger was committing another unrelated offense of criminal trespass in the back yard. Several elements of the burglary were committed within Harrison's sight, and it was reasonable to believe that Appellant was a party to that offense. The evidence complained of was not the product of an illegal arrest. Grounds of Error Nos. Three and Five are overruled.

■ Ground of Error No. Four challenges the trial court's conclusion as to the voluntariness of Appellant's confession. The issue was litigated at the pre-trial hearing and was later submitted to the jury by instruction. Despite the repetition of Appellant's testimony in his brief, the statement of facts discloses ample evidence to support the trial court's conclusion. Sheriff's Investigator James Atwater took custody of the Appellant from the citizens who

effectuated the arrest. Appellant was taken before a Justice of the Peace who administered the requisite magistrate's warnings under Article 38.22 of the Code of Criminal Procedure. Appellant acknowledged his understanding of the warnings. Atwater then took Appellant to the Sheriff's Department, where he personally administered the *Miranda* warnings. Appellant agreed to give a written confession. Atwater testified that Appellant waived the rights expressed in the earlier warnings. No threats, force, promises or other forms of coercion were used. Appellant appeared calm after the law enforcement personnel took charge of him. The confession was reduced to writing and reviewed by the Appellant and a witness, each of whom had a separate carbon copy of the document. Appellant signed the confession, and it was witnessed and notarized.

■ Appellant admitted that no threats or injuries were made by the arresting civilians. If there were any inherently coercive influences attending the citizen's arrest, the record demonstrates their disappearance in the course of Appellant's transfer to law enforcement personnel, his appearance before a magistrate and the recognition of his constitutional and statutory rights. No error is shown in the court's admission of the confession into evidence. Ground of Error No. Four is overruled.

The judgment is affirmed.