**Charles E. MIFFLETON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–86–108–CR.**

Court of Appeals of Texas,
Austin.

April 8, 1987.

Rehearing Denied May 6, 1987.

Charles O. Grigson, Austin, for appellant.

Ken Oden, Co. Atty., Michael E. Denton, Asst. Co. Atty., Austin, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

BRADY, Justice.

Charles E. Miffleton appeals from a judgment of conviction for driving while intoxicated. Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1 (Supp.1987). Appellant was found to have a prior conviction for DWI, and punishment was assessed at a $1,000.00 fine and confinement for one year in the county jail. The jail sentence was probated but as a condition of that probation, appellant's driver's license was suspended for two years. Appellant presents six points of error.

Appellant contends his arrest and the subsequent search of his car violated his rights under the Fourth Amendment to the United States Constitution. He also asserts a videotape made after his arrest was improperly admitted in violation of his Fifth and Sixth Amendment rights under the United States Constitution and his rights under article I, § 10 of the Texas Constitution. Appellant also challenges the sufficiency of the evidence to support his conviction for DWI. Finally, appellant challenges the suspension of his driver's license as a condition of probation because he was not first given the opportunity to attend an alcohol education program as required by statute. We affirm the judgment of conviction.

## FACTS

Appellant was arrested on July 9, 1982, and charged with DWI. At trial, the arresting officer stated that appellant was observed driving his automobile in an erratic manner. According to the officer, appellant was stopped next to her at a traffic light and rapidly accelerated away from that light as soon as it turned green. The officer followed appellant and noticed he was weaving within his own lane. When appellant reached a speed of 53 miles per hour in a 45–mile per hour zone, the officer signaled for appellant to stop.

After appellant pulled over, the officer approached his car and found he was very verbally defiant. The officer eventually ordered appellant out of his car and noticed that he had to lean on the door for support. At this point, the officer testified she noticed that appellant's speech was mumbled, his eyes were bloodshot, and that he had a smell of alcohol on his breath. Based on her observation of these physical characteristics, appellant's demeanor, and his erratic driving, the officer placed appellant under arrest. As an incident of this arrest, the officer searched the passenger compartment of appellant's car and discovered four unopened cans of beer and a half-consumed can under the driver's seat.

After his arrest, appellant was taken to the police station and administered a videotaped sobriety test. During the taping but before the test, appellant was given an opportunity to telephone an attorney. His attempt was thwarted, however, because he was not permitted to make a long distance call from the telephone in the video room. The officer stated that he could make a toll call from another phone in the station. A brief argument then ensued as appellant insisted on speaking with his attorney before any test. The officer eventually stated she would take him to a phone, "as soon as we are finished here." Appellant was never told he did not have to participate in the videotaped test even though he was informed he could terminate any "interview" at any time and that he did not have to consent to a breath test.

The sobriety test administered to appellant consisted of various demonstrations of his present motor skills and balance. He was shown attempting to touch his nose with his eyes closed, attempting to walk a straight line and standing still with his head tilted back. Appellant was also required to count backwards while standing on one foot and to read from a printed card to demonstrate his ability to speak distinctly.

Because appellant made errors in performing the sobriety exercises shown on the tape, we find that this evidence, combined with the testimony of the officer,

would support a judgment of conviction for DWI. Appellant asserts this tape and the contents of the officer's testimony were both improperly admitted. We disagree.

## PROBABLE CAUSE

■ In his first two points of error, appellant asserts that the police officer lacked probable cause to: (1) stop his car; (2) effect an arrest without a warrant; and (3) search his car after that arrest. While a police officer must have probable cause for a full custodial arrest, a mere stop of an individual for the purposes of investigation does not require such substantial justification. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because a temporary detention is considered a lesser intrusion than a custodial arrest, a police officer may stop an individual if the officer has a reasonable suspicion the person is engaged in criminal activity. *Terry, supra; Ferguson v. State*, 573 S.W.2d 516, 522 (Tex.Cr.App.1978). The police officer is deemed to have a reasonable suspicion so long as he can point to specific articulable facts which, in light of his experience and general knowledge, would justify the conclusion that criminal activity is afoot. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Armstrong v. State*, 550 S.W.2d 25 (Tex. Cr.App.1977); *Thompson v. State*, 533 S.W.2d 825, 826 (Tex.Cr.App.1976).

■ An investigatory stop may lead to discovery of facts which justify a full custodial arrest if the officer observes an offense being committed in his presence or view. Tex.Code Cr.P.Ann. art. 14.01(b) (1977). If a police officer has made a full custodial arrest of a driver, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of the car for weapons and evidence of the criminal activity which justified the arrest. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *Corbitt v. State*, 445 S.W.2d 184, 186 (Tex. Cr.App.1969).

■ In this case, the officer testified that appellant was driving in an erratic manner. The officer's observation of appellant's rapid acceleration, weaving, and excessive speed constituted facts upon which she could form a reasonable suspicion that an offense was being committed. After the stop, the officer's suspicion escalated to probable cause to arrest when she noticed appellant smelled of alcohol, had to use the car door for support, mumbled his speech and had bloodshot eyes. These factors were sufficient to justify the officer's conclusion that an offense was being committed in her presence; thus, the officer was authorized to arrest appellant under art. 14.01(b), *supra*. Because the custodial arrest of appellant was lawful, the subsequent search of the passenger compartment of his car was also proper as a search incident to arrest. Appellant's first two points of error are overruled.

## RIGHT AGAINST SELF–INCRIMINATION

■ Appellant next complains that admission of the videotape into evidence violated his right against self-incrimination under both the Fifth Amendment to the U.S. Constitution and art. I, § 10 of the Texas Constitution. Both the federal and state rights against self-incrimination prohibit compelling an accused to give testimonial evidence against himself but neither right extends to purely physical evidence or evidence of physical characteristics. *Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1967); *McCambridge v. State*, 712 S.W.2d 499, 503 (Tex.Cr.App.1986).

■ It has been held that a film merely displaying the physical characteristics of the accused is not testimonial, thus may be used as proof the accused was intoxicated at the time of arrest. *See Carpenter v. State*, 333 S.W.2d 391, 394 (Tex.Cr.App. 1960); *Housewright v. State*, 225 S.W.2d 417, 418 (Tex.Cr.App.1950). The justification for admitting this type of evidence is that a film reveals nothing about the physical condition of the accused that could not be related in testimony by the arresting officer; indeed, a visual recording may well be more accurate than the officer's recollection. *Housewright, supra* at 416. Fur-

thermore, the courts have held many other types of evidence given by an accused which merely demonstrate physical characteristics are not testimonial. *See Olson v. State*, 484 S.W.2d 756, 763 (Tex.Cr.App. 1972) (compilation of numerous cases holding evidence such as fingerprints, footprints, voice samples, fingernail scrapings, etc., were not protected by the right against self-incrimination). In light of *Carpenter, supra,* and *Schmerber, supra,* we hold a videotape merely demonstrating the physical condition of the accused at or near the time of arrest is not testimonial evidence protected by the right against self-incrimination. Appellant's third point of error is overruled.

While a visual record of the accused's physical characteristics is not testimonial, oral statements made by the accused during the visual recording are qualitatively different. In several cases dealing with videotaped sobriety tests, the courts of appeals of this State have held the audio portion of the videotape should be suppressed upon motion of the accused. *See e.g. Knox v. State*, 722 S.W.2d 793 (Tex. App.—Amarillo, 1987); *Recaz v. State*, 722 S.W.2d 32 (Tex.App.—Dallas, 1986); *Jones v. State*, 703 S.W.2d 391 (Tex.App.—Eastland 1986 pet. pending); *Gaithright v. State*, 698 S.W.2d 260, 261 (Tex.App.—Fort Worth 1985 no pet.); *Delgado v. State*, 691 S.W.2d 722, 723 (Tex.App.—San Antonio 1985, no pet.). In all the above cases, with the exception of *Delgado*, the accused asserted either his right to counsel or his right to remain silent on the tape. These courts held it was error to inform a jury that the accused asserted his rights because it could be misconstrued as evidence of guilt. We agree.

■ It appears that the audio portion of the tape was not suppressed in this case. Because appellant requested an attorney before and during the videotaping, we hold the audio portion of the tape should have been suppressed. We do not, however, find error in this case because the trial was to the court. We will presume the trial judge did not construe appellant's assertion of his rights as evidence of guilt; indeed, a trial judge is generally presumed to disregard any inadmissible evidence. *Rodriguez v. State*, 442 S.W.2d 376, 378 (Tex.Cr. App.1969).

## RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT

Appellant's fourth point of error asserts admission of the videotape violated his right to counsel under both the Sixth Amendment of the U.S. Constitution and art. I, § 10 of the Texas Constitution. It has been held that state and federal constitutional rights have distinctly separate bases and that the appellate courts of this state should address both grounds separately to determine if the state right is more extensive than its federal counterpart. *McCambridge v. State*, 712 S.W.2d 499, 503 (Tex.Cr.App.1986).

The Court of Criminal Appeals has decided in a similar situation that there is no right under the Sixth Amendment to consult with an attorney before a chemical test to determine the level of alcohol in the blood. *McCambridge, supra* at 502; *Forte v. State*, 707 S.W.2d 89, 92 (Tex.Cr.App. 1986). In both these cases, however, the Court declined to decide whether an independent right might exist under state law, and remanded the cases back to the courts of appeals to determine that issue.

■ The Sixth Amendment right to counsel does not attach until the initiation of formal judicial or adversary proceedings; thus, an accused generally does not have a right to counsel until he is charged with a crime. *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984); *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972); *Turner v. State*, 486 S.W.2d 797, 800 (Tex.Cr.App.1972). In *Forte, supra,* the Court of Criminal Appeals rejected the theory that the right could extend to "critical stages" before judicial proceedings were initiated, holding that the right only applies to "critical stages" occurring after judicial proceedings have commenced. *Forte* at 91. In the instant case, appellant had not been charged at the time the video-

tape was made, thus appellant had no right to counsel under the Sixth Amendment.

## RIGHT TO COUNSEL UNDER ARTICLE I, SECTION 10 OF THE TEXAS CONSTITUTION

■ While the question of whether the right to counsel under art. I, § 10 of the Texas Constitution attaches before videotaping of a DWI suspect has not been decided by the Court of Criminal Appeals, *see Mills v. State,* 720 S.W.2d 525 (Tex.Cr. App., 1986) (not yet reported) (remanding the state constitutional question), this issue has been addressed by several of the courts of appeals. These courts have uniformly held there is no right to counsel under art. I, § 10 before consenting to a videotaped sobriety test.[1] *See Forte v. State,* 722 S.W.2d 219 (Tex.App.—Fort Worth, 1987); *Recaz v. State,* 722 S.W.2d 32 (Tex.App.— Dallas, 1986); *Ramirez v. State,* 721 S.W.2d 490 (Tex.App.—Houston [1st], 1986); *Floyd v. State,* 710 S.W.2d 807, 810–11 (Tex.App.—Fort Worth, 1986, no pet.). We note that, because of the paucity of prior case law on this issue, none of these courts provided an extensive analysis detailing the authority upon which their conclusions were based.

Article I, § 10 provides many rights to the accused in criminal prosecutions. The right to counsel is guaranteed by this language, "He shall ... have the right of being heard by himself or counsel, or both ..." From the literal language of this provision, it would appear that the framers intended to bestow a right of representation which necessarily would only pertain to proceedings against the accused rather than a more extensive right to the advice of counsel during the precharging stages of a criminal prosecution. Under this construction, the right to counsel under the Texas Constitution would have no greater scope than the federal provision.

Most of the cases applying the art. I, § 10 right to counsel to periods before trial address the need for consultation to facilitate proper trial preparation. In this respect, the courts have held the right extends to pre-trial consultations. *See e.g. Ellis v. State,* 149 Tex.Cr.R. 583, 197 S.W. 351, 353 (1946) ("does not mean merely representation at trial ... but carries with it the right to consultation with and advice of counsel in preparation of the case for trial"); *Welk v. State,* 265 S.W. 914, 917 (Tex.Cr.App.1924) (proper to deny access only because jailer had been killed by prisoner with weapon smuggled by prior attorney); *Turner v. State,* 91 Tex.Cr.R. 627, 241 S.W. 162, 163 (1922) (error to deny appellant private consultation before trial); *Nothaf v. State,* 91 Tex. Cr.R. 378, 239 S.W. 215, 217–18 (1922) (improper to refuse communication for two days); *Wilmans v. Harston,* 234 S.W. 233, 235 (Tex.Civ.App.1922) (ordered sheriff to permit attorney to see her clients). Thus, it appears that any right to counsel in reference to trial preparation is merely coextensive with an accused's Sixth Amendment rights because that need does not arise until the defendant is charged. There are, however, Texas cases suggesting the right to counsel under art. I, § 10 may extend to the precharging period.

In *Hamilton v. State,* 153 S.W. 331, 336 (Tex.Cr.App.1913), a woman suspected of incest was held incommunicado and coerced into providing a confession and grand jury testimony against a codefendant. In an appeal of her partner's conviction, the court considered the denial of her personal right to counsel in the pre-charging period observing that "[h]er case and the defendant's were so intermingled that the rights of the one could not be well separated from the other." *Id.* at 336. Noting she had a constitutional right to counsel, the court found it was reprehensible to not let "her communicate or advise with her attorney." *Id.* at 335. As a result, the court held it was reversible error under art. I, § 10 to prevent the consultation stating:

---

1. Appellant urges that *Jamail v. State,* 713 S.W.2d 776 (Tex.App.1986) holds there is a right to consult with counsel before submitting to a videotaped sobriety test. That case, however, dealt with improper interrogation, not merely a display of physical characteristics; thus, we find it clearly distinguishable from the case at bar.

It is not necessary that a party desiring counsel should be preparing a defense against some accusation after an indictment found or after arrest. The statute is broader and fully comprehends every possible situation in which an accused person or person under arrest or not under arrest desires to consult, or communicate with counsel, or obtain advice of services of counsel in the protection of his rights, or even supposed legal rights.

*Id.* at 336.[2]

Other opinions considering pre-charging denials of counsel have declined to reverse under art. I, § 10. In both *Alexander v. State*, 496 S.W.2d 86 (Tex.Cr.App.1973), and *Parker v. State*, 397 S.W.2d 853 (Tex. Cr.App.1966), police refusals to allow DWI suspects to consult with counsel were not considered reversible error. But both these cases rested their holdings in large part on the fact that no incriminating evidence was obtained as a result of the denial of counsel. *See Alexander, supra* at 87, and *Parker, supra* at 855. This reasoning may be significant because it implies a different result may have been reached had the accused consented to provide incriminating evidence against himself after being denied the opportunity to consult with counsel. A strict reading of *Parker* and *Alexander* suggests that refusals by the police to permit consultation between an accused and his attorney are limited to situations where an exigency justifies the isolation.

While neither *Parker* or *Alexander* contain language authorizing the gathering of evidence from the accused after an assertion of the right to counsel, we also fail to find in them any authority extending the Texas right to counsel to the precharging period. Likewise, in *Hamilton v. State, supra*, despite the extensive language em-

ployed when describing the right to counsel, we find only an application of the right in conjunction with the extraction of grand jury testimony and a confession. Although the *Hamilton* court applied the art. I, § 10 right to counsel to a period before charging, the empaneling of a grand jury would certainly appear to be a commencement of adversary proceedings. Thus, we hold that under art. I, § 10 of the Texas Constitution, appellant had no right to consult with counsel before consenting to the videotaping because formal adversary proceedings had not been initiated against him. Appellant's points of error concerning the admission of the videotape are overruled.

## SUSPENSION OF DRIVER'S LICENSE

 In his final point of error, appellant complains that it was error to suspend his driver's license as a condition of his probation. Citing Tex.Rev.Civ.Stat.Ann. art. 6687b, § 24(g)(1) (Supp.1987), appellant asserts the trial court could not suspend his driver's license because he was never given the opportunity to attend an alcohol rehabilitation program as required by Tex.Code Cr.P.Ann. art. 42.13, § 6c (Supp.1987). Article 6687b, § 24(g)(1) provides:

... the Department [of Public Safety] may not during the period of probation, suspend the driver's license ... of a person if the person is required under Section 6c, article 42.13, Code of Criminal Procedure, 1965, to attend and successfully complete an educational program designed to rehabilitate persons who have driven while intoxicated.

In *Love v. State*, 702 S.W.2d 319, 321 (Tex. App.1986, no pet.), this Court held that a similar suspension of a driver's license was improper under § 24(g)(1) because the offender qualified for the educational pro-

---

**2.** The statute referred to in *Hamilton, supra*, was Tex.Pen.Code art. 1046 (White's Ann. art. 625), which made it a criminal offense to deprive a person in custody of his right to communicate with counsel. This law was the forerunner of our present Tex.Pen.Code Ann. § 39.02 (1974). Section 39.02 broadened the proscription, providing it is an offense to deprive a person in custody of any "right, privilege or immunity." Although art. 1046 expressly mentioned the right to counsel, that provision, like the present law, was penal in nature and did not bestow any substantive rights on the accused. It appears that the *Hamilton* court mentions art. 1046 only by way of analysis for it finds that the denial of communication was both a violation of art. 1046 and "a clear and palpable violation of the Constitution and Bill of Rights." *Id.* at 336.

gram under art. 42.13, § 6c. The State argues appellant is disqualified because he has a previous conviction. We agree.

Article 42.13, § 6c only requires that first time DWI offenders be given an opportunity to attend an alcohol education program before the suspension of their driver's license. Although art. 42.13, § 6c does not expressly state it applies only to first time offenders, the statute begins with this language:

> "If a person convicted of an offense under Article 6701*l*–1 ... is punished under Subsection (c) of that article...."

We note that subsection (c) of art. 6701*l*–1 defines the punishment for an offense under that article "[e]xcept as provided by subsections (d), (e), and (f) of this article...." Subsections (d), (e), and (f) of 6701*l*–1 prescribe punishments for second time offenders, third time offenders, and offenders who cause bodily injury during the commission of the offense, respectively. Thus, subsection (c) of that article only establishes the punishment for first time offenders.

Appellant was not punished under subsection (c) of art. 6701*l*–1, thus, the trial court was not required to permit him the opportunity to attend an alcohol education program before suspending his driver's license. The judgment below clearly states that this was appellant's second conviction for DWI. Furthermore, the punishment assessed, a $1,000.00 fine and confinement in the county jail for one year (probated), is clearly in excess of that prescribed by subsection (c). We find no error in the trial court's action in suspending appellant's driver's license as a condition of probation.

The judgment of the trial court is in all respects affirmed.