**William Clyde KNOX, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 148–87.**

Court of Criminal Appeals of Texas, En Banc.

April 26, 1989.

Roderique S. Hobson, Jr., Lubbock, for appellant.

Travis S. Ware, Dist. Atty., Lubbock, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted by a jury of the offense of driving while intoxicated and the court assessed punishment at ninety days in jail, probated for 24 months, and a fine of $300.00. Tex.Rev.Civ.Stat.Ann. Art. 6701l-1(b) (Vernon Supp.1985). In a published opinion, the Court of Appeals reversed appellant's conviction, finding error in the admission of the audio portion of a video tape made at the county jail after appellant had invoked his right to counsel. *Knox v. State,* 722 S.W.2d 793 (Tex.App.— Amarillo 1987).

We granted the State Prosecuting Attorney's petition for discretionary review to review the holding below that the questions amounted to custodial interrogation, and that the questions and appellant's responses thereto were improperly admitted into evidence "as a product of compulsion, subtle or otherwise, ..." due to the State's failure to respect appellant's invocation of his right to counsel. *Id.* We initially accepted this cause due to a disagreement of the panel below in the judgment of this case and because the majority opinion by the Court of Appeals appeared to conflict with applicable decisions of this Court and the United States Supreme Court. *See* Tex.R.App.P. 200(c)(3) and (5).

The question in this case is whether, after an individual has invoked his right to counsel, the audio portion of a video taped examination or interview, wherein the individual is requested to perform certain aural tests such as reciting the alphabet or reading off a written card, is inadmissible in a subsequent trial because the questions asked the individual and responses thereto constitute improper custodial interrogation. A number of our courts of appeal have taken a similar position to the Amarillo Court in holding that it is reversible error for the audio portion of a videotaped interview to be played before the jury after an accused invokes his right to counsel. *See Jones v. State,* 703 S.W.2d 391 (Tex.App.— Eastland 1986); *Gathright v. State,* 698 S.W.2d 260 (Tex.App.—Fort Worth 1985, no pet.); *Mills v. State,* 696 S.W.2d 421 (Tex.App.—Dallas 1985, no pet.).

After the Amarillo Court of Appeals handed down its opinion in the instant case, we granted review of the Eastland Court's holding in *Jones,* supra, that it was reversible error under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), for the trial court to deny a motion to

suppress the audio portion of a videotape made at the jail following arrest. We agreed with the appeals court that the issue was one grounded in the Fifth Amendment guarantees under *Miranda* and *Edwards*, both supra, and concluded that Jones had timely and specifically invoked her right to counsel following her arrest for suspicion of driving while intoxicated. That was not the end of our inquiry, however. As Judge Clinton wrote for the Court,[1] "[t]he focus of our inquiry now shifts to an analysis of whether appellant was subjected to 'custodial interrogation' as that term is defined by the Supreme Court, at the time of her video tape examination." *Jones v. State,* 742 S.W.2d 398, 406 (Tex.Cr.App.1987).

We quickly found the first prong of our *Miranda* analysis demonstrated Jones to have been "in custody" or "deprived of [her] freedom of action in [a] significant way." *Id.,* citing *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612. The facts showed Jones had already been arrested and read her rights at the time the video tape examination began. Her booking process had started, and she was questioned in the presence of at least two officers.

Having found Jones to have been in custody, our attention turned to the second prong of *Miranda* analysis: whether she had been subjected to "interrogation" during the portion of the video tape played for the jury. Given her timely request for counsel and the fact that her express request was ignored by the police, we noted that any response elicited as a result of interrogation later aired before the jury would require a reversal of her conviction.[2] We then set out the definition of "interrogation" as fashioned by the Supreme Court in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). That working definition bears repeating:

The term 'interrogation' under Miranda (sic) refers not only to express question-

ing, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, ... the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Jones,* supra at 407, citing *Rhode Island v. Innis,* 446 U.S. at 300–02, 100 S.Ct. at 1689–90.

Concluding its analysis, the *Jones* Court noted that final disposition of the case required application of the "interrogation" standard enunciated in *Rhode Island v. Innis,* supra, "to the specific questions posed to appellant, considered in conjunction with any answers or other responses" which those questions may have elicited from that appellant. Because the record in that case lacked a copy of the video tape for our analysis of the specific questions and responses, we remanded the case to the Court of Appeals for their consideration whether the police behavior depicted in the portions of the tape the jury was allowed to hear constituted "interrogation". *Id.*

A similar situation is found in the instant case. We agree with the Court of Appeals that appellant was "in custody" given the uncontradicted fact he had been arrested for suspicion of driving while intoxicated and underwent initial booking procedures. It is also uncontradicted that he invoked his right to counsel not once, but twice. Thus,

---

1. Four members of the Court dissented only to our remand to the Court of Appeals under the auspices of Tex.R.App.P. 50(d).

2. Of course, reversal would not be automatic in such a case. A reviewing court will properly undertake a harmless error analysis where it is

initially determined that an appellant's Fifth Amendment rights have been violated. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also* Tex.R.App.P. 81(b)(2).

appellant has met the first prong of *Miranda* analysis.

As to the second prong of the test, we are unable to review the specific questions and responses evoked during the examination period due to the fact that the video tape in question was mistakenly erased prior to appeal. There being no tape to review, we are unable to determine whether the audio portion of the tape constituted "interrogation" as defined by the Supreme Court. *See Rhode Island v. Innis* and *Jones*, both supra. Therefore, we must ultimately find that the State's petition was improvidently granted. Our disposition of the instant appeal does not reflect agreement with the Court of Appeals' analysis reflecting automatic error in admitting the audio portion of video taped examinations taken after invocation of the right to counsel. *See* and *cf. Jones*, supra.

With the above noted, due to the destruction of the video tape, we are constrained to find that the State's petition was improvidently granted. Tex.R.App.P. 202(k).