Kyle Dwayne **GARNER**, Appellant,

v.

**STATE of Texas**, State.

No. 2–87–079–CR.

Court of Appeals of Texas, Fort Worth.

Oct. 12, 1989.

**500**

Lloyd D. Odle, Lewisville, for appellant.

Jerry Cobb, Crim. Dist. Atty., and Gwinda L. Burns, Asst. Dist. Atty., Denton, for appellee.

Before HILL, LATTIMORE and MEYERS, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, Kyle Dwayne Garner, appeals from a jury conviction of driving while intoxicated. *See* TEX.REV.CIV.STAT. ANN. art. 6701*l*–1(b) (Vernon Supp.1989). The court assessed punishment at ten days confinement in Denton County Jail, a fine of $300, and court costs. Garner presents four points of error.

We reverse and remand.

Sergeant Johnny Wilcox of the Navarro County Sheriff's Department was traveling on Interstate Highway 35 in Denton County, Texas, in a marked patrol car when he observed Garner's vehicle weaving, crossing the center stripe, and leaving the roadway on the side of the road. After observing the vehicle, Wilcox radioed Denton County Sheriff's Office and requested they send an officer. Wilcox followed Garner's vehicle. After a while Garner pulled over to the shoulder of the road and stopped. As Garner exited the vehicle, Wilcox turned on his overhead lights. Deputy Griffin, of Bell County Sheriff's Department who was riding with Wilcox, got out of the patrol car and began talking with Garner. Garner was detained until Denton County deputies arrived on the scene and placed him under arrest for driving while intoxicated.

Garner raises four points of error. The first point of error is not necessary to our disposition of the appeal. TEX.R.APP.P. 90(a).

In his second point of error, Garner contends the trial court erred in refusing his request to instruct the jury that a person who is not acting in the capacity of a police officer does not have the right to conduct a *Terry* stop; a temporary detention for purposes of investigation. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880–81, 20 L.Ed.2d 889 (1968); *Armstrong v. State*, 550 S.W.2d 25, 30 (Tex.Crim.App.1976). We agree.

The facts are undisputed that Deputy Wilcox was not within his jurisdiction when he detained Garner. The trial court held Deputy Wilcox was acting within his authority under TEX. CODE CRIM.PROC. ANN. art. 14.01(a) (Vernon 1977) which provides:

> A peace officer or any other person, may, without a warrant, arrest an offender where the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

*Id.* Article 14.01(a) permits citizens who are not peace officers to arrest those committing crimes against the public peace.

When the issue is raised by the evidence, the jury shall be instructed to disregard evidence they believe may have been obtained in violation of the constitution or laws of Texas. TEX. CODE CRIM. PROC.ANN. art. 38.23 (Vernon Supp.1989). The trial court instructed the jury not to consider evidence obtained by a peace officer as the result of an unlawful arrest. Under Texas law, evidence obtained by an officer *or other person* in violation of the law shall not be admitted. *Id.* Therefore, evidence obtained as a result of an unlawful arrest by a private citizen shall not be admitted. *Hill v. State*, 641 S.W.2d 543, 544 (Tex.Crim.App.1982); *Irvin v. State*, 563 S.W.2d 920, 923–24 (Tex.Crim.App.—1978) (en banc); *compare Hill v. State*, 643 S.W.2d 417, 419 (Tex.App.—Houston [14th Dist.]) (exclusionary rule of fourth amendment to U.S. Constitution applies only to governmental action), *affirmed*, 641 S.W.2d 543 (Tex.Crim.App.1982).

The trial court instructed the jury that a peace officer can conduct a temporary detention to investigate his reasonable suspicion and then act on probable cause acquired during his investigation. The court also instructed the jury that a peace officer, when outside his jurisdiction, has no greater power to make an arrest than a private citizen. Garner requested the court instruct the jury that temporary detention is available only to a peace officer within his jurisdiction and is not available to a private person. The trial court denied the request.

The power to arrest is controlled by statute and the courts should not expand that power. *De Leon v. State*, 201 S.W.2d 816, 818 (Tex.Crim.App.1947). The power of a private person to arrest another person is limited to an offense committed in his presence or within his view. *De Leon*, 201 S.W.2d at 818; TEX. CODE CRIM. PROC.ANN. art. 14.01(a). This requirement of direct observation has been interpreted to mean the private citizen must observe enough to establish probable cause a crime is being committed. *Marion v. State*, 642 S.W.2d 55, 58 (Tex.App.—El Paso 1982), *pet. ref'd*, 652 S.W.2d 369 (Tex.

Crim.App.1983) (en banc); *compare Rhodes v. State*, 712 S.W.2d 235, 236 (Tex. App.—San Antonio 1986, no pet.). This is a rational rule because "every citizen cannot be allowed indiscriminately to play the role of a cop." *Alexander v. United States*, 390 F.2d 101, 107 (5th Cir.1968) (interpreting TEX. CODE CRIM.PROC.ANN. art. 14.01). The State cites *Romo v. State*, 577 S.W.2d 251, 253 (Tex.Crim.App. [Panel Op.] 1979) to support the proposition that a private citizen is authorized to conduct a temporary detention. In *Romo*, the court held a private citizen could make an arrest, but the court did not discuss temporary detention. *Id.* The State has not cited any case which authorizes a private citizen to conduct an investigatory stop based only on an articulable suspicion. We hold a private citizen must have probable cause to believe a crime is being committed in order to justify an arrest or detention, and a private citizen does not have the authority to make a *Terry* stop. The trial court erred in refusing Garner's requested instruction. Garner's second point of error is sustained.

Garner also contends the trial court erred in allowing the jury to hear the audio portion of the videotape in which appellant was questioned after he invoked his right to an attorney. The trial court did not suppress the audio portion of the videotape because the continuing questioning of Garner after his request for an attorney did not constitute custodial interrogation within the meaning of *Miranda*. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The following is a short rendition of the videotape made of Garner. Deputy Nancy Simpson was in the videotaping room with appellant and another unidentified police officer. Simpson had Garner stand with his back to a corner in between two vertical lines. She requested his name, address, phone number, date of birth, social security number, and driver's license number. Simpson then told appellant he had been arrested for driving while intoxicated and read his *Miranda* warnings. After reading the warnings, Simpson asked appellant if he wanted to speak to Simpson and the other deputy. He stated he wanted to

speak to his attorney. The deputy went on and asked appellant to take everything out of his pockets, then had him count his money out loud. Simpson read appellant the DWI statutory warning from a piece of paper. She then asked appellant if he would submit to a breath test; he refused. Appellant then signed two copies of the statutory warning. Next appellant asked the deputy about posting bond and she told him he would be able to do so. Appellant asked the deputy what else he was being charged with. Simpson told him he was charged with unlawfully carrying a weapon and he could make a bond for that too. Appellant told her the gun was not his and asked the deputy what he should do. Simpson told appellant he should see his lawyer, and he was charged with the offense but the charge did not render him guilty. Appellant stated he thought it was permissible to carry a gun for work while traveling across three county lines and carrying an amount of cash. Simpson replied such was for him to prove; all she could say was that she arrested him and observed a handgun in plain view in his vehicle. Appellant rambled on about this for a few minutes. Simpson then requested to see his driver's license again and spent some time filling out or marking a form of some kind. Appellant then asked the deputy whether he was pulled over because he was weaving or because he "picked up those wetbacks." Simpson told him the other deputy said appellant was weaving across the road. Appellant further elaborated upon allowing "wetbacks" to hitch a ride with him. Simpson again asked appellant if the driver's license showed appellant's current address to which he replied by giving her his address again. He then asked her what amount of bail would be required. The deputy thought it was $500, but told appellant he could ask the judge when he got there. Appellant further rambled about "wetbacks" while Simpson, obviously using up time, wrote something on the form. Appellant requested a blood test but the deputy told him all they offered was a breath test. Appellant wanted to know if he was automatically guilty for refusing the test.

Simpson said no, and told him he had twenty days to put in written notice for a hearing on his license suspension. After more "wetback" rambling, appellant told Simpson he "had been busted for a lot of things." He told her he was arrested in 1978 for drugs, "delivery of a controlled substance, to-wit: marihuana of more than one-fourth ounce but less than two ounces." Since then he had tried to keep his "nose clean." He told Simpson he had been given three tickets in 1971; two for no inspection sticker and one for no driver's license for a motorcycle. He then told the deputy: that for the drug arrest he received seven years probation and a $5,000 fine; now his record is clean; and now he "was charged with haulin' the wets." Simpson told him he was not charged with that. Appellant denied weaving on the road, and the tape ended. Deputy Simpson testified appellant did not have an opportunity to call his attorney because it is departmental policy that they have appellant on video for fifteen minutes. After fifteen minutes it is policy that she take appellant back to the jailer, and it is under their restrictions to let appellant have his phone call. Simpson stated she did not refuse appellant an opportunity to talk to an attorney.

It is undisputed that at the beginning of the videotaping, appellant was in custody, and during the taping he invoked his right to counsel. At that point, not only was Deputy Simpson required to cease any custodial interrogation, *Miranda*, 386 U.S. at 473–74, 86 S.Ct. at 1627–28 and *Ochoa v. State*, 573 S.W.2d 796, 800 (Tex. Crim.App.1978) (en banc) (State's motion for reh'g, en banc), but any oral statement appellant made thereafter *as the result of custodial interrogation* was inadmissible, *Edwards v. Arizona*, 451 U.S. 477, 487, 101 S.Ct. 1880, 1886, 68 L.Ed.2d 378 (1982), particularly by means of the audio portion of the tape. *See* TEX. CODE CRIM.PROC. ANN. art. 38.22 (Vernon 1979 and Vernon Supp.1989). Once appellant has expressed his desire to deal with the police only through counsel, he is not subject to further custodial interrogation until counsel

has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 1405, 89 L.Ed.2d 631 (1986), *citing Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85; *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984).

■ In the instant case, Officer Simpson asked appellant, subsequent to informing him of his *Miranda* rights, if he wished to speak with them (the police). His reply was "speak to my attorney." We conclude by this statement appellant invoked his right to counsel. *Smith v. Illinois,* 469 U.S. 91, 93, 105 S.Ct. 490, 491, 83 L.Ed.2d 488 (1984) (statement "Uh, yeah. I'd like to do that," held sufficient to invoke the right to counsel); *Ochoa,* 573 S.W.2d at 799–800 (where defendant made some mention that he might possibly want to talk to an attorney held sufficient).

■ Once appellant asserted his right to counsel, further interrogation regarding the offense should not have taken place unless appellant himself initiated further communication. *Edwards,* 451 U.S. at 484, 101 S.Ct. at 1884–85. The term "interrogation" under *Miranda* refers to express questioning, as well as any words or actions on the part of the police, other than those normally attendant to arrest, that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *Jones v. State,* 742 S.W.2d 398, 407 (Tex.Crim.App.1987) (en banc). The latter part of this definition focuses on the perceptions of the suspect, not the intent of the police. *Jones,* 742 S.W.2d at 407 (quoting *Innis,* 446 U.S. at 300–02, 100 S.Ct. at 1689–90).

Questioning "normally attendant to arrest and custody" is not "interrogation," but the legal distinction between questioning which is to be considered "interrogation" and that which is "normally attendant to arrest and custody" may not always be readily apparent. *McCambridge v. State,* 712 S.W.2d 499, 505–06 (Tex.Crim.App.

1986) (en banc); *Paez v. State,* 681 S.W.2d 34, 36 (Tex.Crim.App.1984), *citing Ancira v. State,* 516 S.W.2d 924, 927 (Tex.Crim. App.1974). In an arrest for driving while intoxicated, police may create additional confusion by giving *Miranda* warnings without informing the accused that such warnings do not apply when deciding whether to give a breath specimen. *McCambridge,* 712 S.W.2d at 506. Analysis is to proceed on a case-by-case basis. *Paez,* 681 S.W.2d at 36.

■ An officer's obtaining appellant's name, address, social security number, and refusal to take an intoxilyzer test until he had talked with his attorney are matters normally attendant to arrest and custody, and do not constitute a custodial interrogation within the meaning of *Miranda. See McCambridge,* 712 S.W.2d at 505–07 (*Miranda* protections aimed at dissipating the inherently coercive atmosphere associated with custodial interrogations; questioning normally attendant to arrest and custody not interrogation); *Knox v. State,* 722 S.W.2d 793, 795 (Tex.App.—Amarillo 1987,), *review dism'd,* 769 S.W.2d 244 (Tex. Crim.App.1989).

■ TEX.REV.CIV.STAT.ANN. art. 6701*l*–1, note sec. 24 (Vernon Supp.1989) provides for equipment to visually record the appearance of a person arrested under this act, it does not provide for audio recording features that might be available. Here, the objection was to the introduction of the videotape because it contained audio recordings of the comments by Garner including his request for an attorney. The objection should have been sustained. *Jones v. State,* 742 S.W.2d 398, 401–02 (Tex.Crim.App.1987) (en banc), *on remand,* 745 S.W.2d 94 (Tex.App.—Eastland 1988, pet. granted) holds the audio taken with video of the defendant during a field sobriety test should not have been put in evidence. The opinion emphasizes the defendant there requested a lawyer.

■ Neither the assertion by the defendant of his constitutional assurance that he may remain silent nor his request for a lawyer should be put in evidence. *Miffle-*

*ton v. State,* 728 S.W.2d 880 (Tex.App.—Austin 1987), *aff'd,* 777 S.W.2d 76 (Tex.Crim.App.1989). Even if the questions would not normally be considered interrogation, the *Jones* case indicates that if done as a part of a field sobriety test, the questions rise to the objectionable level of "custodial interrogation." The video here was in fact a field sobriety test even though not so designated. The defendant was required to stand for fifteen minutes in a corner of the room between two vertical black stripes that accentuated any body movement. He was not permitted to lean on the wall or the adjacent table. He was directed to put all of his pocket contents on the table, count his money, add it up in his head, announce the results, and put the money back in his pocket.

After he was read his *"Miranda* rights" he requested a lawyer. The attending deputy was thereafter careful to avoid questions which would obviously be expected to elicit an incriminating response, but answered questions from appellant during the remainder of the fifteen-minute period; all under the eye and ear of the video-audio camera.

It is one thing to videotape the accused under the implied sanction of TEX.REV. CIV.STATE.ANN. art. 6701*l*–1, note sec. 24. It is another thing to audio-video the accused while putting him through a number of involuntary activities calculated to determine sobriety or intoxication.

There is before us the matter of harmful error. TEX.R.APP.P. 81(b)(2). We cannot say that beyond a reasonable doubt the evidentiary errors pointed out above did not contribute to the conviction of the appellant. Point of error number three is sustained.

In his last point of error, appellant argues the trial court erred in admitting appellant's refusal to submit to a breath test after he had invoked his right to counsel. We disagree. This court has previously held that the failure to allow consultation with counsel did not bar the introduction of evidence of the refusal to submit

to breath testing. *Forte v. State,* 722 S.W.2d 219, 221 (Tex.App.—Fort Worth 1986), *affirmed,* 759 S.W.2d 128 (Tex.Crim. App.1988) (en banc); *Floyd v. State,* 710 S.W.2d 807, 808 (Tex.App.—Fort Worth 1986), *dism'd,* 768 S.W.2d 307 (Tex.Crim. App.1989); *see also Mills v. State,* 720 S.W.2d 525, 526 (Tex.Crim.App.1986) (en banc) (per curiam); *McCambridge,* 712 S.W.2d at 504. Appellant's point of error four is overruled.

The trial court's judgment is reversed and the cause remanded to the trial court.