# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00173-CR

**Sierra Williams, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. D-1-DC-09-904005, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Following a bench trial, appellant Sierra Williams was convicted of the offense of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02(a)(1) (West 2003). Punishment was assessed at six years' imprisonment. In a single point of error, Williams asserts that the district court abused its discretion in denying her motion to suppress. We will affirm the judgment.

## BACKGROUND

The district court heard evidence that on the morning of October 30, 2008, Daphne Hodges perceived a "very loud shout" coming from outside her house. Hodges looked out her window and observed two women "kind of walking back and forth" on the front porch of a neighbor's house, "looking in the windows and the door." One of the women "shouted again," which, according to Hodges, prompted a man she had seen across the street to come and join the

women on the porch. Hodges recalled, "The moment that young man stepped on the front porch, one of those young women turned and kicked [the neighbor's] door in, and all three people went inside the house." Hodges then yelled for her son, Bradley, to get up and told him "something to the effect that the neighbor's house was being broken into, that he needed to get up and help me." Hodges called 911 while Bradley grabbed a shotgun and rushed outside. In court, Hodges identified Williams as one of the women who had entered the house.

Bradley testified that as he approached the neighbor's house, he "saw feet running back and forth in the house, through the front door, which was open." He acknowledged that he had not seen anyone break into the house and did not know who was inside. Standing at the curb of the neighbor's property, Bradley issued a "verbal challenge" for the people to come out of the house. According to Bradley, the man came out of the house first, followed by the two women. In court, Bradley identified Williams as one of the women.

Bradley testified that the women, after exiting the house, moved to his left in an attempt to escape, while the man slowly retreated back into the house.[1] Bradley also moved to his left, trying to "keep everybody in front of me." The women slowly advanced on Bradley's position and were eventually "face to face" with him. As one of the women tried to "flank" Bradley on his left side, Bradley "checked that with the barrel of the shotgun, into her chest, and she stopped." Bradley then backed away from the women, returned to his original position, and ordered the women to stay where they were until the police arrived. According to Bradley, the women again tried to get away from him but were apprehended by the police before they could escape.

---

[1] The man apparently escaped and was never apprehended.

The first officer to arrive on the scene was Officer Lee Atchley of the Austin Police Department. Upon his arrival, Atchley observed Bradley in the front yard of the neighbor's house holding a shotgun in "a ready position" but not aiming the gun at anyone. Atchley drew his firearm and commanded Bradley to drop his weapon. Bradley complied and then directed Atchley's attention to the two women, accusing them of breaking into the house. Atchley arrested both of the women. In court, Atchley identified Williams as one of the women he had apprehended.

After the State rested its case, Williams presented an out-of-time "motion to suppress identification of the appellant." The district court allowed Williams to argue the motion. Williams asserted that her identification by Hodges, Bradley, and Atchley should be suppressed because their identification of her was the "fruit" of an illegal citizen's arrest. According to Williams, Bradley did not have probable cause to believe that the people in the house were committing burglary and, therefore, did not have the authority to arrest Williams and the others. *See* Tex. Code Crim. Proc. Ann. art. 14.01(a) (West 2005) (providing that citizen may arrest felony offender only when "the offense is committed in his presence or within his view"). The district court denied the motion to suppress.

Williams then presented evidence in her defense, including the testimony of Jolanda Armstrong, another neighbor, who was driving in her car when she witnessed the confrontation between Bradley and the women. Armstrong described what she saw as "a tall, white bald-headed male dragging a black girl with a gun." When asked to describe what Bradley was doing with the gun, Armstrong recalled, "He was dragging her down, pointing the gun. If she tried to walk away or whatever, he would drag her. She did eventually get across the street . . . . At that

3

point [the other woman] showed up (indicating) coming from the front of the house, and he dragged her . . . . Each time he would drag and then she was trying to get away, he would aim the gun." Armstrong testified that Bradley was aiming the gun "[a]t each person. Whichever one he was holding is the person he would aim the gun at." According to Armstrong, Bradley ordered the women to "[g]et down, you are not going anywhere." Armstrong called the police and reported the incident. Officer Atchley arrived shortly thereafter.

After considering the evidence, the district court found Williams guilty of committing the offense of burglary of a habitation. Williams then pleaded true to an enhancement count in the indictment alleging that she had previously been convicted of the offenses of possession and delivery of a controlled substance. After hearing evidence on punishment, the district court sentenced Williams to six years' imprisonment. This appeal followed.

**ANALYSIS**

In her sole issue on appeal, Williams asserts that the district court abused its discretion in denying her motion to suppress her identification by witnesses Hodges, Bradley, and Atchley. "A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). "'In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case.'" *Id*. (quoting *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008)). "In reviewing a trial court's ruling on a motion to suppress,

appellate courts must view all of the evidence in the light most favorable to the trial court's ruling." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

We are to "afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We are to "afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id*. We review de novo "mixed questions of law and fact" not falling within that category. *Id*.

On this record, we cannot conclude that the district court abused its discretion in denying Williams's motion to suppress. It has long been the rule in Texas that a defendant's face cannot be a suppressible fruit of an illegal arrest. *See Pichon v. State*, 683 S.W.2d 422, 426 (Tex. Crim. App. 1984) (citing *United States v. Crews*, 445 U.S. 463, 477-79 (1980) (White, J., concurring)); *Henderson v. State*, 82 S.W.3d 750, 754 (Tex. App.—Corpus Christi 2002, pet. ref'd); *Blondett v. State*, 921 S.W.2d 469, 473 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *see also Thornton v. State*, 145 S.W.3d 228, 234 (Tex. Crim. App. 2004) (discussing different concurring opinions in *Crews* and observing that majority of justices rejected claim that "a defendant's face can be a suppressible fruit of an illegal arrest"). In other words, a witness's identification of the defendant will not be suppressed simply because the arrest that enabled the identification was illegal. *See Crews*, 445 U.S. at 478 (White, J., concurring) ("A holding that a defendant's face can be

considered evidence suppressible for no reason other than that the defendant's presence in the courtroom is the fruit of an illegal arrest would be tantamount to holding that an illegal arrest effectively insulates one from conviction for any crime where an in-court identification is essential."). Here, the only evidence that Williams sought to suppress was her identification by the witnesses. Therefore, even assuming the citizen's arrest was illegal, the district court would not have abused its discretion in denying the motion to suppress. *See Whithurst v. State*, 690 S.W.2d 110, 111 (Tex. App.—Houston [14th Dist.] 1985, no pet.) ("Even if the appellant were under unlawful arrest at the time the witness identified him, the illegal arrest could not have tainted the witness's in-court identification.").[2]

Additionally, we cannot conclude on this record that the citizen's arrest was unlawful. In the case of a felony, a citizen has probable cause to arrest an offender when the offense is committed in his presence or within his view. Tex. Code Crim. Proc. Ann. art. 14.01(a). This requires the citizen to "observe enough of the situation to establish probable cause that a crime is being committed." *McGuire v. State*, 847 S.W.2d 684, 686 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Here, Bradley testified that his mother—who directly observed the break-in—informed him that the house had been broken into, and, when he approached the house, he saw "feet running back and forth in the house, through the front door, which was open." Bradley further testified that, although he could not identify who was inside the house, he "could tell it wasn't Sara," the wife

---

[2] In her motion to suppress, Williams challenged her identification by the witnesses both in court and "at the scene." However, there is no basis in the record for distinguishing between the in-court and out-of-court identifications, nor does Williams provide any argument or authority for why they should be treated differently.

6

of the homeowner. Also, Paul Mason, the homeowner, testified that the burglars had damaged the front door and that this damage was visible from outside the house. The district court could have reasonably inferred that Bradley had observed this damage to the door when he approached the house and concluded that the house was being burglarized. Viewing this evidence in the light most favorable to the ruling, we cannot conclude that the district court abused its discretion in finding that Bradley had probable cause to believe that a burglary was being committed. *See Marion v. State*, 642 S.W.2d 55, 58 (Tex. App.—El Paso 1982, pet. ref'd); *see also Carmona v. State*, No. 03-02-00201-CR, 2003 Tex. App. LEXIS 4900, at *7-8 (Tex. App.—Austin June 12, 2003, pet. ref'd) (mem. op.) (finding that citizens had probable cause to believe burglary was being committed when they were informed by apartment manager of burglary and they observed individual that they did not recognize leaving apartment).

Moreover, the district court heard evidence that Hodges saw Williams enter the property before her son took any action. Thus, the district court would not have abused its discretion in finding that the events which enabled Hodges to identify Williams occurred before and were independent of the alleged illegal arrest. Additionally, Williams was identified in court by another neighbor, Raymond Roberts, who testified that he had observed Williams and her companions walking around the neighborhood shortly before the alleged burglary, "going door to door." Williams did not challenge this identification. Accordingly, the identification of Williams by Bradley and Atchley, even if erroneously admitted, was merely cumulative of other properly admitted evidence and thus harmless. *See Mack v. State*, 928 S.W.2d 219, 225 (Tex. App.—Austin 1996, pet. ref'd).

7

We overrule Williams's sole issue on appeal.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   February 12, 2010

Do Not Publish