**GARY CARLTON CAMP, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–94–00152–CR**

Court of Appeals of Texas,
Tyler.

Oct. 30, 1995.

Allan K. Butcher, Fort Worth, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

A jury convicted Gary Carlton Camp of aggravated assault upon a peace officer and assessed his punishment at sixty years in prison. Camp contends there was a fatal variance between the indictment and the State's proof and that the court erred when it admitted testimony *regarding an extraneous offense.* We will affirm.

On April 14, 1993, a Smith County Deputy Sheriff, Charles Baker, was dispatched to Camp's residence to respond to a domestic disturbance. When Baker arrived at Camp's home, Camp's daughter led him to a back bedroom. Although the bedroom door was closed, Baker heard a male voice yelling, "I'll blow your f——ing head off." Baker then entered the room and saw Camp and his wife with red marks on her neck. When Baker asked Camp what was the problem, Camp answered, "You're the f——ing problem."

Camp's wife warned Baker that Camp had a pistol. Baker attempted to lift Camp's shirt at the same time that Camp attempted to pull the pistol out of his pants. During the scuffle, Camp threatened to "blow [Baker's] f——ing head off" if Baker didn't take his hand off of Camp's gun. Baker then "kneed" Camp in the groin, causing the pair to move eight to ten feet across the room and fall to the floor. By this time, Camp was lying face down on the floor, had removed the pistol from his belt and was raising himself up by his elbows in an attempt to turn the pistol around and aim it at Baker, who had fallen on Camp's back. Each time, Baker prevented Camp from pointing the barrel of the pistol toward his face by restraining Camp's hand. At various times during the scuffle, Camp attempted to cock the pistol hammer, but Baker stuck his hand between the hammer and the firing pin, injuring the webbing between Baker's fingers. Finally, Camp gave the pistol to Baker.

Camp's indictment stated in pertinent part:

... GARY CARLTON CAMP did then and there intentionally and knowingly threaten a peace officer, namely CHARLIE BAKER, with imminent bodily injury, with a deadly weapon, to-wit: a firearm, that in the manner of [its] use and intend-ed use was capable of causing death and serious bodily injury, *by pointing said deadly weapon toward said peace officer* . . .

(Emphasis ours)

At trial, the jury saw at least two demonstrations of the scuffle and the various positions in which the pistol was pointing. Portions of the testimony from the demonstrations follow:

Q: (BY THE PROSECUTOR) Okay. Was the gun always at this position, or what all positions was it in, I guess, as the struggle went on?

A: (BY BAKER) Right. He would push back and I would push down.

Q: Okay.

A: And at the same time, he was trying to pull the hammer back.

Q: Clicking the hammer?

A: Right.

Q: Okay. There were occasions when it would be down here, and *there were occasions when it would be back toward your face?*

A: Right.

(Emphasis ours)

. . . . .

Q: Okay. And where was it pointed at the time—or where—what was the direction of the pistol?

A: He was attempting to point it towards me.

. . . . .

Q: Let me ask you this, Deputy Baker: What actions did you take to avoid the gun being pointed toward you?

A: At the time Mr. Camp would turn it back towards me, I would lean back where my head would be directly behind his.

Q: And how many times would you say that you made that motion?

A: Four or five times, probably.

. . . . .

Q: If a gun is shot at this point and you are at the position you've described, what's going to be the effect on you?

A: If the bullet doesn't hit me, the muzzle blast will. It could very well blind me. It would even blind Mr. Camp if it was to have went off at this point.

On cross-examination, Camp's attorney asked Baker:

Q: [Camp] never actually pointed it at you then, did he?

A: No, sir.

The Court's charge to the jury stated in pertinent part:

Now, if you find from the evidence beyond a reasonable doubt that ... the defendant ... did then and there, intentionally and knowingly threaten a peace officer, namely CHARLES BAKER, with imminent bodily injury, with a deadly weapon, to-wit: a firearm, that in the manner of its use or intended use was capable of causing death or serious bodily injury, *by pointing said deadly weapon toward said peace officer....* (Emphasis ours)

The jury found Camp guilty of aggravated assault of a peace officer and made an affirmative finding that he used or exhibited a deadly weapon.

In his first point of error, Camp contends the evidence failed to prove that he pointed his pistol "toward" Baker; therefore, he argues that there was a variance between the allegations contained in the indictment and the proof adduced at trial. According to Camp, neither he nor Baker ever maintained directional control over the pistol. Although Camp attempted to point the weapon toward Baker, the evidence is undisputed that Baker moved his head to avoid the barrel from pointing at him. In his brief, Camp gives a lengthy analysis of the meaning of the words "at" and "towards".[1] He reasons that, because Baker admitted that Camp never successfully pointed the pistol "at" him, the State failed to prove the allegations in the indictment that Camp pointed the pistol "toward" Baker.

The State, on the other hand, argues that both the Supreme Court and the Court of Criminal Appeals have held that "at" is not as definite as other prepositions and "at the house may be in or near the house." *Howard v. Fulton*, 79 Tex. 231, 14 S.W. 1061 (1891). The State also cites *Caldwell v. State*, 136 Tex.Crim. 524, 126 S.W.2d 654, 655 (1939) (defining "at the courthouse door"),

---

1. "Because the indictment alleged that the Appellant pointed a weapon "towards" the officer, but the testimony stated that the weapon was not pointed "at" the officer, an analysis of the meanings of these prepositions is required. Basically, "at" and "towards" are interchangeable prepositions. "At" is a "term of considerable elasticity of meaning, and somewhat indefinite." BLACK'S LAW DICTIONARY 114 (5th ed.1979). Further, "at" "often expresses simply nearness and proximity ..." *Id.*, at 1337. Accordingly, "at's" indication of nearness and proximity equates with "towards" direction.

"At" is used as a function word to indicate the goal of an indicated or implied action or motion, such as "aiming at a target." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, Merriam–Webster, 498 (1983). That definition and common use of "at" equates to a definition of "toward" as "at a point in the direction of." *Id.*, at 1248.

"At" can also indicate a targeted action in space, such as "Look at John," or "Throw the stone at the wall." Celce–Murcia and Larsen–Freeman, THE GRAMMAR BOOK, Newbury House, at 257. Similarly, "toward," meaning "in the direction of," could be interchanged with "at" in the previous examples: "Look toward John," and "Throw the stone toward the wall." *Id.*, at 258.

Of particular note is the OXFORD ENGLISH DICTIONARY's definition of "at": "Of motion directed

towards; In the direction of, towards, so as to get at; often with hostile intent, 'against'; in *to run, rush, go, have, throw, shoot, let drive, aim, etc.* at. OXFORD ENGLISH DICTIONARY, Volume I, page 739 (emphasis in original). Correspondingly, "toward" indicates "direction toward something aimed at." *Id.*, Volume 18, page 314.

Notwithstanding the above definitions equating "at" and "toward," some may argue that "at" implies a more specific location than "toward." However, Texas case law has provided very general and sweeping interpretations of otherwise specific words. A series of old cases, but adopted and quoted by the Court of Criminal Appeals as late as 1992, have defined "at" in terms of bond forfeitures as used in the phrase "at the courthouse door." In *Caldwell v. State*, 136 Tex.Crim. 524, 126 S.W.2d 654, 655–656 (1939), the Court held that calling the name of the defendant some twelve feet away from the courthouse steps, rather than "at" the courthouse door, satisfied the statutes. The Court quoted "Webster" as defining "at:"

Primarily this word expresses the relation of presence, nearness in time or place or direction towards.... It is less definite than "in" or "on"; "at" the house may be "in" or "near" the house. *Id.*, at 655.

Thus, Texas courts interpret "at" as indicating a general area, rather than specific point where an action occurs and is equivalent to "toward."

and further reasons that, even if "toward" meant only "at" it would not be restricted as Camp desires, but it would include the connotation "near". The State then quotes from the OXFORD ENGLISH DICTIONARY and shows that, in its prepositional form, "toward" is defined as:

1) Of motion (or action figured as motion): In the direction of; so as to approach (but not necessarily reach: thus differing from To).

2) Of position: In the direction of; on the side next to; turned or directed to, facing.

3) In the direction of; esp. with words expressing tendency or aim, and followed by an abstract noun expressing state, condition, etc.

5) Of condition or quality: verging upon, near; somewhat like, nearly, as if.

2 OXFORD ENGLISH DICTIONARY 3364 (Compact ed.1971). Applying the common usage of the word, the State concludes that "toward" means something less than being directed at the exact goal or object. Even though Camp's pistol may not have been pointed "at" Baker, the State reasons that the direction of the barrel was, at a minimum, pointed "near" Baker, which was sufficient to coincide with the allegations in the indictment. We agree.

■ The State is bound by the allegations in the charging instrument and must prove them beyond a reasonable doubt. *Taylor v. State*, 637 S.W.2d 929, 933 (Tex.Cr.App.1982); *Weaver v. State*, 551 S.W.2d 419, 420 (Tex.Cr. App.1977); *Moore v. State*, 531 S.W.2d 140, 142 (Tex.Cr.App.1976). Here, the indictment alleged that he "intentionally and knowingly threatened [Baker] with imminent bodily injury with a deadly weapon." The evidence is undisputed that Camp assaulted a deputy sheriff while wrestling in a violent struggle over a gun. Although no shots were fired, the jury found that a deadly weapon had been used or exhibited during the offense. No case law or statute mandates that the weapon must be pointed directly at the officer.

In response to Camp's reasoning that the evidence failed to prove that the pistol was actually pointed "toward" Baker, we note that the word "toward" has also been defined in BLACK'S LAW DICTIONARY, which is considered an authoritative source on the use of American legal terms. BLACK'S LAW DICTIONARY 1491 (6th ed. 1990). BLACK'S LAW DICTIONARY defines "toward" as: "In the direction of, or, on a course or line leading to." *Id.* In this case, the jury heard the testimony of Baker and back-up officer Kea and saw a demonstration of the scuffle between Camp and Baker. Taken in its entirety, the jury could have reasonably found from the evidence that Camp intended to point the gun at Baker and shoot him; that at various times during the scuffle, Camp pointed the pistol "in the direction of "Baker within a close range"; and that, if Camp was prevented from pointing the barrel of the gun directly in Baker's face, it was only because Baker skillfully moved his head to avoid being shot. Accordingly, we hold that the allegations in the indictment did not vary from the State's proof that Camp intentionally threatened a peace officer with a deadly weapon by "pointing said deadly weapon toward" the peace officer. Point one is overruled.

■ In his second point, Camp contends that the court erred when it allowed Baker to tell the jury about the conversation that occurred between Baker and Camp's wife shortly after Camp was subdued. Baker testified that, in the kitchen, Camp's wife told him that her husband had threatened to kill her prior to Baker's arrival. Neither Camp nor his wife testified at trial. Camp objected that Baker's testimony would be evidence of an extraneous offense that was offered to show that his conduct conformed to his "bad character". *See* TEX.R.CRIM.EVID. 404(b). The evidence that Camp had threatened to kill his wife had been brought before the jury on direct examination of Baker, who heard Camp threaten to kill his wife before he opened the door to the bedroom. Therefore, the extraneous offense in which Camp now objects was brought before the jury in a different form without objection.

Outside the presence of the jury, the trial court conducted a hearing and held that Baker's testimony revealed Camp's state of mind and intent and was admissible as *res gestae*.

After the jury returned, they heard the following testimony:

Q. (BY THE PROSECUTOR) Deputy Baker, let me ask you this: When you were—I believe you stated that you went to the kitchen with the wife of the Defendant?

A. (BY THE WITNESS) Yes, sir.

Q. And what did she tell you then that had just happened before?

A. She told me that Mr. Camp came home and had been drinking and that when he drinks that he becomes violent.

Q. And did she tell you the specific events—what were the specific events that she related to you?

A. That—like I say, he was intoxicated.

THE DEFENSE ATTORNEY: Your Honor, I renew my objection. May I have a running—

THE COURT: Yes. The Court allows you a running objection with respect to that. The Court overrules the objection.

THE DEFENSE ATTORNEY: Thank you, Your Honor.

THE COURT: You may proceed.

A. (BY THE WITNESS) That they'd been arguing, that he choked her and also hit in the head with the pistol and threatened her with it.

Q. (BY THE PROSECUTOR) And what was the specific threat that she relayed to you?

A. That he was going to kill her.

Q. Did she tell you how he said that?

A. He just—she just said that he said he was going to kill her.

The court gave the following instruction to the jury:

You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, *and even then you may consider the same in determining the mo-tive, intent or knowledge of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.*

(Emphasis ours)

Camp argues that the indictment charged him with the offense of aggravated assault on a peace officer, but it made no allegations that he had assaulted his wife or threatened to kill her. Therefore, he reasons that any evidence of his misconduct toward his wife was extraneous and not admissible. We do not agree.

█ It is true that an accused is entitled to be tried only for offenses for which he is charged and not for some collateral crime or for a being a criminal generally. *Couret v. State,* 792 S.W.2d 106, 107 (Tex.Cr.App.1990). An "extraneous offense" has been defined as an offense that is "extra, beyond, or foreign to the offense for which the party is on trial," *Ridinger v. State,* 146 Tex.Crim. 286, 174 S.W.2d 319, 320 (Tex.Cr.App.1943). Evidence of extraneous offenses is not generally favored because such evidence is inherently prejudicial, tends to confuse jurors about the issues that they are to resolve, and forces the defendant to defend charges without notice. *Cobb v. State,* 503 S.W.2d 249 (Tex.Cr.App. 1973). However, the trial court's decision to admit an extraneous offense is given due deference and, absent an abuse of discretion, that determination should not be disturbed on appeal. *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Cr.App.1993); *Templin v. State,* 711 S.W.2d 30, 33 (Tex.Cr.App.1986).

█ Rule 404(b) states:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

TEX.R.CRIM.EVID. 404(b). Extraneous offenses may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident, provided that the probative value is not substantially outweighed by its prejudicial effect. *Id.*,403; *see Montgomery v. State*, 810 S.W.2d 372, 378 (Tex.Cr.App.1990); *see also Turner v. State*, 754 S.W.2d 668, 672 (Tex.Cr.App.1988).

Therefore, the key issue is whether Camp's threats to his wife had any relevance in the trial of this case beyond its value as character evidence. If not, the evidence pertains to an extraneous offense and is inadmissible as a matter of law. TEX.R.CRIM EVID. 404(b); *Gilbert v. State*, 808 S.W.2d 467, 472 (Tex.Cr.App.1991). After the court weighed the evidence, it found that Baker's conversation with Camp's wife was more probative of Camp's motive and intent than it was prejudicial to Camp's character. Their conversation was probative in revealing that Camp was drawing the gun on Baker because he did not want anyone to arrest or interrupt him for or while he assaulted his wife. We hold that the evidence was properly admitted under Rule 404(b). Furthermore, the court correctly cautioned the jury to consider Baker's testimony only for the limited purpose of considering Camp's motive or intent. *See* TEX.R.CRIM.EVID. 105(a). If any error resulted from the court's decision to permit Baker's testimony, we hold that it was rendered harmless by the court's limiting instruction. Camp waived his complaint by allowing the same type of evidence to be admitted without objection. Point of error number two is overruled. Judgment of the trial court is **affirmed.**