# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-02-00201-CR

---

**Rudy Carmona, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 3012632, HONORABLE BOB PERKINS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Rudy Carmona guilty of the offense of burglary of a habitation.  *See* Tex. Pen. Code Ann. § 30.02(a)(1) (West 2003).  Due to appellant's prior convictions, the jury assessed punishment at seventy-five years in prison.  Appellant contends that (1) his warrantless arrest and the seizure of evidence from him was improper; (2) absent the evidence recovered during the improper arrest, there is legally and factually insufficient evidence to sustain the conviction; (3) evidence of his heroin use should have been excluded; and (4) the jury charge was erroneous.  We affirm the district court's judgment of conviction.

## Background

Desiree Velasco was on summer vacation visiting her sister, Vanessa Bustillos. While alone in her sister's apartment on the afternoon of June 27, 2001, Velasco was on the computer exchanging messages with Bustillos. Velasco heard loud banging noises outside. As she looked through the front door peephole, she saw appellant standing outside the apartment next door. She watched through the peephole as appellant looked around. Although appellant's back was toward her door, she saw appellant take a screwdriver out of his pocket and it looked as if he was breaking into the apartment. She immediately typed a message to Bustillos saying she thought someone was breaking into the apartment next door. Bustillos responded to Velasco that she had called the apartment complex's office and told management about the incident. Bustillos testified that she called the apartment office rather than 911 because she knew the response time would be quicker. Bustillos then called Velasco and stayed on the line to help keep her calm. Bustillos testified that it was less than three minutes from the time Velasco first told her about the incident until Velasco told her that the maintenance men had arrived.

Velasco saw the maintenance men talking with appellant in front of the apartment next door. She noticed that appellant was holding a white plastic grocery bag which he did not have when she first saw him outside the apartment next door. Appellant then ran off and the two maintenance men ran after him.

As Ramiro Rodriguez, the maintenance supervisor for the apartment complex, began to testify, appellant objected and requested a suppression hearing outside the jury's presence. During the hearing, Rodriguez testified that he had worked at the apartment complex for four years and part

2

of his duties included handling potential crimes. When he received a report that someone was attempting to break into an apartment, he and Joaquin Salgado drove the apartment complex's golf cart to the apartment next door to Bustillos. When Rodriguez and Salgado arrived, they saw appellant walking away from the apartment carrying a white plastic grocery bag, which appeared to contain items. Appellant stopped about ten feet away from the apartment, bent over and picked up some rocks. Neither Rodriguez nor Salgado recognized appellant, so they approached him and asked who he was. Appellant responded that he was "taking a break." Rodriguez asked appellant if he could stay for a minute, but appellant ran. Rodriguez called the office, told management that appellant was running, and then ran after appellant. As he was running, appellant pulled a screwdriver out of his pants, dropped it, stopped to pick it up, and ran again. Appellant finally stopped and Rodriguez grabbed him. Appellant told Rodriguez, "Let me go. I'll give you all the stuff in this bag if you let me go." Rodriguez told him he could not and Salgado came over from the other end of the building. Salgado put appellant in a "lock" and Rodriguez grabbed the screwdriver from appellant. The apartment manager came to the scene and then called the office and instructed them to call 911. Appellant began walking away and then again started running. Salgado grabbed him, and after a brief struggle, Rodriguez and Salgado held appellant on the ground and waited for the police who arrived in less than five minutes.

Appellant objected that Rodriguez and Salgado were without authority to apprehend him and that all evidence obtained as a result of their citizen's arrest should be excluded. Additionally, appellant moved to exclude any statements he made to them because they resulted from an improper custodial interrogation. The district court overruled appellant's objections and

3

Rodriguez testified to the same information. Rodriguez also testified that appellant told him that he was sick and that he had just gotten out of prison. Salgado testified similarly to Rodriguez.

Linda Tristan testified that at the time of the incident, she was living with appellant and had given him permission to use her car. Police notified her that they had her car at the apartment complex and that they found a toolbox. Tristan thought the toolbox belonged to appellant.

Austin Police Officer Hoemeke answered the 911 burglary call. When he arrived he saw two maintenance men holding appellant on the ground. After Rodriguez and Salgado told Officer Hoemeke what happened, he arrested appellant for burglary of a habitation. Officer Hoemeke went to the burgled apartment and noticed that the lock on the deadbolt was loose and that there were pry marks along the doorjamb. Inside the white grocery bag were jewelry, coins, personal items, and papers. While riding to the police station, Officer Hoemeke testified that during a "small talk" conversation, appellant spontaneously told him that he had a three-balloon a day heroin problem that required quick cash. Appellant objected to Officer Hoemeke's statements about heroin use, but the court overruled the objections. The court, however, immediately instructed the jury that they could consider appellant's spontaneous statement about his heroin use only as evidence of motive.

Joahna Sarrett testified that she lived in the apartment next to Bustillo and when she returned home that day she found her jewelry box on her bed and the jewelry missing. She did not know appellant and identified the property in the plastic grocery bag as belonging to her.

4

**Discussion**

*Citizen's arrest*

Appellant first contends that because Rodriguez and Salgado did not observe him commit either a felony or a breach of the peace, they had no right to pursue, restrain, or hold him until the police arrived. Appellant contends that the maintenance men's detention was illegal, and therefore, the evidence recovered in the plastic grocery bag was the fruit of an unlawful arrest and should have been suppressed. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 2003). The State responds that appellant was properly arrested and the district court properly admitted all evidence acquired in the subsequent search.

A private citizen may without a warrant arrest a person when an offense is committed in his presence or within his view, if the offense is a felony. *See id.* at art. 14.01(a). Direct observation of the commission of the crime has been interpreted as requiring the private citizen to observe enough of the situation to establish probable cause that a crime is being committed. *McGuire v. State*, 847 S.W.2d 684, 686 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (citing *Garner v. State*, 779 S.W.2d 498, 501 (Tex. App.—Fort Worth 1989), *pet. ref'd per curiam*, 785 S.W.2d 158 (Tex. Crim. App. 1990)). Here, Rodriguez and Salgado received information from the apartment complex's management office that a particular apartment was being burglarized. They arrived at the apartment within minutes of the call and observed appellant walking away from the apartment door with a white plastic grocery bag in his hand. Although Rodriguez had worked at the apartment complex for four years, he did not recognize appellant. Rodriguez observed appellant kneel down and pick up a handful of rocks. When Rodriguez asked him to stay where he was, he

5

turned and ran. Given these circumstances, Rodriguez and Salgado had probable cause to believe appellant had committed a burglary of the apartment. We hold that given the circumstances, their arrest of appellant was valid.

In reviewing whether a trial court erred in admitting evidence, the appellate court applies the abuse of discretion standard. *See Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999). The district court's decision to admit evidence will not be disturbed on appeal unless that decision is outside the zone of reasonable disagreement. *See Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). Having concluded that there was nothing improper about the arrest, we also hold that the district court did not abuse its discretion in admitting the evidence seized. Appellant's first two issues are overruled.

### *Legal and factual sufficiency*

Appellant contends that the evidence was legally and factually insufficient to support a conviction for burglary of a habitation. Viewing the evidence in a light most favorable to the verdict, the reviewing court determines whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991). In reviewing the factual sufficiency of the evidence, the reviewing court asks whether a neutral review of all the evidence demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

6

The State had to prove beyond a reasonable doubt that appellant intentionally and knowingly entered a habitation without the effective consent of the owner and attempted to commit or committed theft. *See* Tex. Pen. Code Ann. § 30.02(a)(1). Viewing the evidence in a light most favorable to the verdict, one afternoon Velasco heard loud banging noises next door. She looked through the front door peephole and saw appellant using a screwdriver to open the front door of the apartment next door. After Velasco informed her sister, who immediately relayed the information by calling the apartment's management office, Rodriguez and Salgado arrived to find appellant within ten feet of the apartment door carrying a plastic grocery bag containing items from the burgled apartment. They did not recognize appellant and he was the only person in the area. As the two men approached appellant, he reached down to pick up a handful of rocks. When the maintenance men asked appellant what he was doing, he told them he was "taking a break" and then ran. Rodriguez and Salgado chased appellant. A screwdriver fell out of appellant's pants, he stopped running, picked it up, and then ran again. Eventually, the men stopped running and appellant offered to give Rodriguez the items in the bag if he would release appellant. Salgado held appellant while Rodriguez took the screwdriver away from appellant. The two men held appellant until the police arrived. We hold that the evidence is legally and factually sufficient to support the conviction for burglary of a habitation. Appellant's third issue is overruled.

### Evidence of appellant's heroin use

Appellant contends that he lacked notice that the State intended to prove to the jury that he was a heroin user at the time of the burglary. Further, appellant contends that evidence of

his heroin use should have been excluded because it was more prejudicial than probative. Appellant asserts that he properly requested that the State inform him of other crimes, wrongs or acts it intended to prove at trial. The State included a list of fourteen specific acts, none of which included heroin use.

At trial when the State began questioning Officer Hoemeke about appellant's statement regarding his heroin use, the district court excused the jury and conducted a hearing on the admissibility of the statement. Appellant objected that the statement was inadmissible pursuant to code of criminal procedure articles 38.22 and 38.23, it was more prejudicial than probative under rule of evidence 403, and it was inadmissible to show motive under rule 404(b). *See* Tex. Code Crim. Proc. Ann. arts. 38.22, 38.23 (West Supp. 2003); Tex. R. Evid. 403, 404(b). At trial, appellant did not object that he lacked notice, and thereby failed to preserve his contention for appellate review. *See* Tex. R. App. P. 33.1(a). Moreover, when Officer Hoemeke testified about appellant's comments regarding his heroin use, the court gave the jury a limiting instruction which directed them to consider the statement only if they found beyond a reasonable doubt that appellant participated in the act and then only to consider appellant's comments about his heroin use with regards to the issue of motive.

Appellant also contends that his statement regarding his heroin use was more prejudicial than probative and should have been excluded. *See* Tex. R. Evid. 403. Evidence of drug usage may be used to show motive. *See Franco v. State*, 25 S.W.3d 26, 28 (Tex. App.—El Paso 2000, pet. ref'd). Here, the State introduced appellant's statement as proof of motive—given appellant's heroin addiction and need for cash, it would appear more likely than not that he

8

committed the burglary. Again, the court's limiting instruction required the jury to consider this evidence only if it found that appellant committed the act beyond a reasonable doubt, and then only as regards the issue of motive. *See Camp v. State*, 925 S.W.2d 26, 32 (Tex. App.—Tyler 1995, pet. ref'd). If any error resulted from the court's decision to permit evidence of appellant's heroin use, it was rendered harmless by the court's limiting instruction to the jury that it only consider the evidence in the event they determined appellant participated in the offense and then only as regarding motive. Appellant's fourth and fifth issues are overruled.

### *Jury Charge*

Finally, appellant contends that he was entitled to a jury charge on the issue of whether an offense was committed within the sight of Rodriguez and Salgado and that the jury could not consider the evidence unless they believed the evidence had not been illegally obtained. In this regard, the court gave the jury the following instruction addressing the sole claim for the illegality urged by appellant:

> Now therefore, before you consider the testimony of the citizens Joaquin Salgado and Ramiro Rodriguez, concerning the defendant's statements, if any, after his detention, you must first find beyond a reasonable doubt that the offense was committed in their presence or within their view and if you do not so find beyond a reasonable doubt then you will disregard the testimony concerning his statements.

Contrary to appellant's contention, the district court gave the jury charge requested by appellant that addressed this issue. Appellant's issue is overruled.

9

## Conclusion

Having overruled appellant's issues, we affirm the district court's judgment of conviction.

_____

Jan P. Patterson, Justice

Before Justices Kidd, B. A. Smith and Patterson

Affirmed

Filed:   June 12, 2003

Do Not Publish