# NO. 12-21-00078-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SAMUEL AUGUSTUS VIRGO,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Samuel Augustus Virgo appeals his conviction for evading arrest. In two issues, Appellant challenges the legal sufficiency of the evidence to support his conviction and argues that the trial court erred in permitting the State to introduce evidence of Appellant's prior convictions. We affirm.

## BACKGROUND

Appellant was charged by indictment with evading arrest in that he, while using a vehicle, intentionally fled from a person he knew was a peace officer who was attempting to lawfully arrest or detain him, a third degree felony.[1] The indictment also alleged that Appellant used or exhibited a deadly weapon, to wit: a motor vehicle, that in the manner and means of its use and intended use was capable of causing death and serious bodily injury, during the commission of or immediate flight from the offense. Appellant pleaded "not guilty," and the case proceeded to a jury trial. The jury found Appellant "guilty" of evading arrest as charged in the indictment and found that he used a deadly weapon during commission of the offense. The jury assessed Appellant's punishment at nine years of imprisonment and a $5,000.00 fine. This appeal followed.

---

[1] *See* TEX. PENAL CODE ANN. § 38.04(a), (b) (2)(A) (West 2016).

In his first issue, Appellant argues that the evidence is legally insufficient to support his conviction.

**Standard of Review and Applicable Law**

In Texas, the ***Jackson v. Virginia*** standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. ***Brooks v. State***, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. ***Jackson v. Virginia***, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. ***Padilla v. State***, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. ***Brooks***, 323 S.W.3d at 899.

When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. ***Clayton v. State***, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. ***Id.*** Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. ***Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. ***Hernandez v. State***, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.).

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04(a) (West 2016). Thus, the elements of the crime are (1) intentionally (2) fleeing (3) from a person whom the defendant knows is a peace officer (4) trying to lawfully detain or arrest him. ***Miller v. State***, 605 S.W.3d 877, 882 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

**Trial Testimony**

At trial, Chad Hogue, chief deputy for the Smith County Fire Marshall's office, testified that he is a certified peace officer with the authority to stop someone for a traffic violation. On November 6, 2017, he was traveling north on Highway 69 along with Deputy Hassell W. Glover, III in a separate truck. Both Hogue and Glover were driving pickup trucks with red and blue lights mounted on the brush guard which flashed when activated and a siren similar to one on a sheriff's vehicle. The vehicles had light bars with multiple red and blue lights and writing on each side identifying the trucks as being Smith County Fire Marshall's vehicles.

Hogue testified that he looked in his rearview mirror and saw a motorcycle, i.e., a sports bike, traveling at a high rate of speed. He identified Appellant as the driver of the motorcycle. Hogue stated that he was traveling close to the speed limit and Appellant "flew" past him "really fast." Glover described the speed as "very shocking." Hogue stated that Appellant was "weaving in and out of" the other vehicles. At that point, Hogue decided to initiate a traffic stop to give the person driving the motorcycle a verbal warning to slow down. Hogue activated his lights and sirens and thereafter, Glover also activated his lights and sirens. Hogue and Glover caught up to Appellant before the intersection near the old entrance to Tyler Pipe as Appellant had to slow down due to traffic. Hogue said that he was directly behind the motorcycle and Appellant turned and looked at him. Hogue stated that Appellant traveled between the four to six vehicles at the intersection, or "split" them, "blew through" the green light, and rapidly accelerated. Hogue believed Appellant was attempting to evade him. Hogue stated that at one point, he was traveling about one hundred miles per hour and Appellant was "gradually" leaving him or pulling away from him. Glover also testified that the motorcycle was "getting away" from them.

Detective Sherman Dollison, a detective with the Smith County Sheriff's Office, testified that on the date of the offense, he was in Lindale when dispatch alerted him to the pursuit and described Appellant's motorcycle. He began traveling southbound on Highway 69 towards Interstate 20. Dollison was driving a silver four-door Silverado truck and wore plain clothes. His truck had red and blue lights on the grill, in the upper passenger corner of the windshield, and in the upper middle of the back window. As he traveled under the overpasses at the intersection of Interstate 20 and Highway 69, he saw the motorcycle coming over the hill traveling northbound at a high rate of speed. Dollison pulled into the intersection, activated his lights and sirens, and

blocked the intersection with the front of his vehicle facing southbound and the center of his vehicle across the center lane, thereby blocking both northbound lanes. According to Dollison, the intersection light was red and other vehicles were stopped.

As Appellant approached the intersection, Dollison stated that Appellant slowed because of the stopped vehicles in both northbound lanes. Appellant "split[] a lane, going between two cars." According to Dollison, Appellant had room to pull over and stop but did not do so. Once Appellant "split" the vehicles, he made a u-turn and headed southbound in the northbound lane. Hogue and Glover testified that when Detective Dollison blocked the intersection, Appellant slowed down, circled around the front of an 18-wheeler truck or a larger vehicle in the left-hand lane, and traveled back towards Hogue and Glover "head-on," or going in the wrong direction of travel. Hogue "went to the left" to block Appellant, turning his vehicle broadside, and Appellant circled back around behind the larger vehicle and other traffic, and continued northbound again towards Interstate 20. Dollison testified that he followed Appellant after he began traveling southbound in the northbound lane of Highway 69. When Appellant made another u-turn, Dollison again followed Appellant. Dollison stated that Appellant traveled through the intersection and maneuvered into the turn lane to approach the interstate. But Dollison "gunned" his truck and got in front of Appellant under the far overpass. At that point, Appellant grabbed his front brake and went over the handlebars. Dollison exited his truck and placed Appellant in handcuffs.

According to Hogue and Dollison, when they activate their lights and sirens, vehicles in front of them usually move to the right or stop on the roadway. Hogue testified that he has never seen anyone "gun" it, accelerate, and "split" vehicles in order to get out of his way. Nor had Hogue or Dollison seen anyone drive into oncoming traffic to get out of their way. Hogue described Appellant's actions as "evasive" and Dollison believed Appellant was evading him based upon Appellant's heading southbound in the northbound lane.

Appellant testified that he owned a trucking company and was an over-the-road truck driver. He said that on the offense date, he was returning to Dallas from Tyler on Highway 69 in order to deliver a load that he had left in Dallas. He admitted that he was speeding and might have been traveling close to one hundred miles per hour. At some point, Appellant observed "fire trucks" next to him. After he passed the fire trucks, he stated that both vehicles activated their lights. He did not hear the vehicle's sirens and believed that the fire trucks were going to a

4

fire or accident. At the intersection near Tyler Pipe, Appellant stated that he stopped and noticed that the fire trucks had their lights activated. He did not pull over because he was not in the way even though he had been taught to do so. Instead, he said, he drove off and changed lanes. According to Appellant, when he approached the intersection at Interstate 20, the light was red and he stopped. When the light turned green, Appellant noticed a silver truck attempt to cut him off and come around as if it was making a u-turn. He stated that he was under the underpass with his turn signal on to enter Interstate 20 when the silver truck came around him. At that point, he said, he was off his motorcycle and on the ground.

Appellant denied that the silver truck was blocking the intersection at Highway 69 and Interstate 20 or that it had its lights and sirens activated. He denied turning and going the wrong direction of travel or "splitting" vehicles despite the testimony of Hogue, Glover, and Dollison. Appellant testified that he did not know that Hogue or Glover were police officers. However, he admitted that in 2008 and 2013, he pleaded guilty to evading arrest on foot. He also admitted that police vehicle lights are red and blue.

**Analysis**

Appellant argues the evidence is insufficient to show that he was aware that he was being detained by law enforcement officers, that he knew Hogue was a peace officer, or that he intentionally fled from Hogue. Appellant argues the evidence established that none of the trucks were marked with any indicator that they were law enforcement vehicles. He further argues that his helmet inhibited his ability to hear distant noises.

However, ample evidence exists to demonstrate that Appellant knew that Hogue, Glover, and Dollison were attempting to arrest or detain him. Appellant stated that Hogue and Glover activated their lights after he passed them at an admittedly high rate of speed. Both deputies testified that they activated their sirens as well. Hogue and Glover testified that Appellant looked at them at the Tyler Pipe intersection, "split" the vehicles at the intersection, and "blew through" the green light. Although Appellant stated that he believed Hogue and Glover were going to a fire or accident, he failed to pull over as he knew to do but drove off and changed lanes. At the intersection of Highway 69 and Interstate 20, Hogue, Glover, and Dollison testified that Appellant "split" vehicles when the intersection was blocked by Dollison's truck with lights and sirens activated. Appellant made a u-turn, traveling southbound in the northbound lane, and made another u-turn after Hogue blocked his southbound path on Highway 69. Appellant's

evasive actions were consistent with an attempt to evade arrest. *See Hays v. State*, No. 12-11-00313-CR, 2013 WL 2286044, at *3 (Tex. App.—Tyler May 22, 2013, no pet.) (mem. op., not designated for publication); *Pate v. State*, No. 07-15-00397-CR, 2017 WL 3882749, at *4 (Tex. App.—Amarillo Sept. 6, 2017, pet. ref'd) (mem. op., not designated for publication).

From this evidence, the jury reasonably could have determined that Appellant intentionally fled from a person that he knew was a peace officer trying to lawfully detain or arrest him. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found each element of evading arrest or detention beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 38.04(a); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 912. Accordingly, we overrule Appellant's first issue on appeal.

## EXTRANEOUS OFFENSES

In his second issue, Appellant argues that the trial court erred in permitting the State to introduce evidence of Appellant's prior convictions.

### Standard of Review and Applicable Law

We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Williams v. State*, No. 05-14-00567-CR, 2015 WL 4931447, at *4 (Tex. App.—Dallas Aug. 18, 2015, pet. ref'd) (mem. op., not designated for publication); *Hernandez v. State*, 351 S.W.3d 156, 160 (Tex. App.—Texarkana 2011, pet. ref'd). We will not reverse the trial court unless a clear abuse of discretion is shown. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). If the trial court's decision is within the zone of reasonable disagreement, the trial court has not abused its discretion, and we will uphold the trial court's ruling. *De La Paz*, 279 S.W.3d at 343–44; *Williams*, 2015 WL 4931447, at *4; *Hernandez*, 351. S.W.3d at 160. A trial court's ruling that admits extraneous acts is generally within the zone of reasonable disagreement if the evidence shows that "1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *De La Paz*, 279 S.W.3d at 344. Furthermore, the trial court's evidentiary ruling will not be disturbed if it is correct on any theory of law applicable to that ruling. *Id.*; *Williams*, 2015 WL 4931447, at *4; *Hernandez*, 351 S.W.3d at 160–61.

Rule 404(b) allows the admission of evidence of other crimes, wrongs, or acts for purposes other than to "prove [the] character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990). "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b). Whether extraneous-offense evidence has relevance other than for character conformity is a question for the trial court. *De La Paz*, 279 S.W.3d at 343. The trial court must also balance between the probative value of the evidence and the counter factors set out in Rule 403, although that balance is slanted toward the admission of otherwise relevant evidence. *Id.*; *Montgomery*, 810 S.W.2d at 388; *see* TEX. R. EVID. 403.

In considering this balancing test, courts consider: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way[";] (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. *De La Paz*, 279 S.W.3d at 348-49 (citing *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000)).

**Analysis**

On cross-examination, Appellant admitted that the charge at issue was not the first time he had "run" from law enforcement. He stated that in 2008 and 2013, he pleaded "guilty" to evading arrest on foot. Appellant said that he knew that law enforcement vehicle's lights are red and blue. However, Appellant argues that evidence he was convicted of evading-by-foot on two prior occasions was not relevant to a material, non-propensity issue, but was used to show character conformity and propensity to commit a crime, forbidden by Texas Rule of Evidence 404(b). We agree with Appellant that there are differences between his prior convictions, mainly that he fled from law enforcement on foot versus evading Hogue, Glover, and Dollison with a motorcycle. However, the State argued that the prior evading-by-foot offenses were relevant to establishing a lack of mistake by Appellant. The State said that Appellant's testimony was that

he believed Hogue's and Glover's trucks were "fire trucks" and that he did not pull over because he believed they were traveling to an accident or fire, not merely that he did not know that Hogue and Glover were peace officers. According to the State, the prior evading-on-foot convictions stemmed from Appellant evading officers from the Dallas Police Department whose vehicles all have red and blue lights, similar to Hogue's and Glover's vehicle lights. The trial court admitted evidence of the prior convictions for the purposes of rebutting lack of mistake or accident according to Rule 404(b) because Appellant denied that he evaded law enforcement and had no intent to evade law enforcement.

Unlike when evidence is offered under Rule 404(b) to prove identity or a signature crime, the degree of similarity required to rebut a defensive issue is not great, and the extraneous offense need not be identical to the charged offense. *See **Blackwell v. State***, 193 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *see also **Dennis v. State***, 178 S.W.3d 172, 178–79 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). What is similar here is that in both instances, according to the State's proof, Appellant acted intentionally to flee from a peace officer. *See **King v. State***, No. 12-07-00433-CR, 2010 WL 1510204, at *6 (Tex. App.—Tyler Apr. 16, 2010, pet. ref'd) (mem. op., not designated for publication). Whether Appellant evaded law enforcement on foot makes it more likely that Appellant acted intentionally when he evaded law enforcement using a vehicle is a question on which reasonable minds may differ. *See **King***, 2010 WL 1510204, at *6. In light of Appellant's testimony that he did not know that Hogue's and Glover's trucks were law enforcement vehicles and did not intend to evade them, the trial court's decision to allow the extraneous offense evidence to rebut the defense's theory of mistake is subject to reasonable disagreement. *See **Bass v. State***, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). Accordingly, we hold that the trial court did not abuse its discretion in allowing the evidence pursuant to Rule 404(b).

It is not enough, however, that the evidence is relevant. Pursuant to Texas Rule of Evidence 403, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of delay or needless presentation of cumulative evidence. TEX. R. EVID. 403. Evidence that Appellant previously tried to evade law enforcement is the kind of evidence that has the potential to impress a jury "in some irrational but nevertheless indelible way." *See **Montgomery***, 810 S.W.2d at 390. As noted above, we must consider the four-part balancing test to determine

if the probative value of the two prior convictions was not substantially outweighed by the danger of unfair prejudice to the Appellant. *See **De La Paz***, 279 S.W.3d at 348-49. First, the State had need for the prior convictions to establish a fact of consequence, which was Appellant's intent to evade Hogue. Appellant testified that he did not know Hogue was a peace officer, he thought Hogue's vehicle was a "fire truck," and he did not intend to evade him but, instead, get out of his way. Appellant's prior convictions for evading-by-foot made the facts of consequence, his intent to flee Hogue and knowledge that he was a peace officer attempting to lawfully detain Appellant, more probable. Further, Appellant admitted to running from the police and pleading guilty to evading arrest twice.

Second, the prior convictions' potential to impress the juror in some irrational way was not likely. The discussion between the State's attorney and Appellant was brief and fairly bland, and the trial court included a limiting charge that restricted the jury's consideration of this evidence in determining intent or lack of mistake of Appellant. Third, the State used less than three and a half pages to discuss Appellant's prior convictions of evading-by-foot and his knowledge of the color of lights used by law enforcement during the guilt/innocence phase of the trial. Fourth, the State presented evidence to show Appellant's intent and knowledge, including his evasive actions when confronted with three vehicles with activated lights and sirens but without law enforcement markings. Appellant's counsel acknowledged that knowledge and intent were the only issues in the case. Further, the State's evidence was contradicted by Appellant's testimony. Here, reviewing the record as a whole and giving due deference to the trial court, we cannot say it abused its discretion in finding the danger of unfair prejudice did not substantially outweigh the probative nature of the State's extraneous offense evidence. Thus, the trial court's decision to admit the extraneous offenses fell within the zone of reasonable disagreement. *See **De La Paz***, 279 S.W.3d at 343–44; ***Williams***, 2015 WL 4931447, at \*4; ***Hernandez***, 351. S.W.3d at 160. Accordingly, we hold that the trial court did not abuse its discretion in allowing the evidence pursuant to Rule 403.

And even if the trial court did abuse its discretion in admitting the extraneous offense evidence, the error is harmless. In this case, the court's limiting instruction required the jury to consider this evidence only if it found that Appellant committed the offenses beyond a reasonable doubt, and then only in "determining the intent or lack of mistake" of Appellant. *See **Camp v. State***, 925 S.W.2d 26, 32 (Tex. App.—Tyler 1995, pet. ref'd). If any error resulted

from the trial court's decision to permit evidence of Appellant's prior conviction of evading-by-foot, it was rendered harmless by the trial court's limiting instruction to the jury that it only consider the evidence in the event they determined Appellant committed the offenses beyond a reasonable doubt and then only in determining intent or lack of mistake. *See Carmona v. State*, No. 03-02-00201-CR, 2003 WL 21353943, at *4 (Tex. App.—Austin June 12, 2003, pet. ref'd) (mem. op., not designated for publication).

Therefore, we overrule Appellant's second issue on appeal.

## DISPOSITION

Having overruled Appellant's first and second issues on appeal, we ***affirm*** the judgment of the trial court.

GREG NEELEY
Justice

Opinion delivered July 29, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 29, 2022**

**NO. 12-21-00078-CR**

**SAMUEL AUGUSTUS VIRGO,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0211-19)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*